FRA S. p. A. et al., Plaintiffs,

v.

SURG–O–FLEX OF AMERICA, INC., and Joseph Ventura, Defendants.

No. 75 Civ. 3363 (CHT).

United States District Court,
S. D. New York.

Aug. 15, 1975.

Pavia & Harcourt, New York City, for plaintiffs; Frances B. Bernstein, New York City, of counsel.

Dahan & Appel, New York City, for defendants; Paul H. Appel, and Marc Dahan, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs seek an Order of this Court granting a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1] Defendants have cross-moved to dismiss pursuant to Rule 12(b).[2] For the reasons stated below, the motion for a preliminary injunction is granted and the motion to dismiss is denied.

The facts underlying this dispute are fairly simple. Plaintiff, FRA S.p.A. ("FRA"), is the Italian manufacturer of an elasticized, net bandage sold in this country. FRA Surgifix, Inc. is its exclusive United States distributor and a wholly-owned subsidiary of FRA. Plaintiff William Gruen is the Vice President of FRA Surgifix, Inc. Defendant SURG-O-FLEX of America, Inc. ("SURG-O-FLEX") is the former United States distributor of Surgifix products and now sells a similar elasticized, net bandage

---

1. The action is brought under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1126(h)(i).

2. Defendants' motion to dismiss is somewhat unusual in that it is addressed to the plaintiffs' motion rather than to the complaint. As such, the Court will look beyond the verbiage and to the substance of the defendants' allegations. The bulk of defendants' motion is really posed in opposition to the plaintiffs' motion and will be considered as such.

under the trademark SURG-O-FLEX. Defendant Joseph Ventura is the President of SURG-O-FLEX of America, Inc.

Defendant SURG-O-FLEX, through a predecessor corporation, became the sole United States distributor of the products of FRA in 1970. The relation, however, proved to be a strain, and in late 1972, the parties severed their ties and memorialized the parting with a written settlement agreement. Two portions of that agreement are relevant here: (1) a provision requiring plaintiffs to supply defendants with plaintiffs' product for 120 days after the date of the settlement agreement (¶ 1) and (2) a provision providing for arbitration (¶ 9).

The problem herein arose when plaintiffs allegedly found samples of its product in many areas of the country with defendants' trademark literally pasted on the box, thereby obscuring plaintiffs' product name. Since the names are similar—Surgifix and SURG-O-FLEX—plaintiffs allege that the public has been and will be misled and that the confusion in the market place has caused and will continue to cause damage to plaintiffs' reputation. This harm, plaintiffs fear, is irreparable and relief cannot await a determination on the merits.

■ Plaintiffs seek a preliminary injunction restraining defendants from placing their labels on the plaintiffs' packages and an order requiring the recall of all such falsely labelled packages or in the alternative to have all of the misleading labels removed and the removal verified. This relief is sought under 15 U.S.C. § 1125(a).[3] Under that section the Court has the power to grant a preliminary injunction and in order to grant relief there is no need for the Court to find a registered trademark. *Apollo Distributing Co. v. Apollo Imports, Inc.,* 341 F.Supp. 455 (S.D.N.Y.1972). Nor must there be any showing of an intent to deceive. *Id.*

■ The purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits. *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir.1953). A preliminary injunction may never be obtained as a matter of right. *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). It is clearly addressed to the discretion of the district court. *Checker Motors Corp. v. Chrysler Corp., supra,* 405 F.2d at 323. Historically this remedy has been viewed as drastic or extraordinary in nature and, absent a clear showing that movant has carried the burden of persuasion, the relief will be denied. *Dopp v. Franklin National Bank,* 461 F.2d 873, 878 (2d Cir.1972); *Checker Motors Corp. v. Chrysler Corp., supra,* 405 F.2d at 323. That burden consists of showing either a reasonable probability of success on the merits and irreparable injury or that movants have raised serious questions going to the merits and that the balancing of the equities tips decidedly in their favor. *Robert W. Stark, Jr., Inc. v. New York Stock Exchange, Inc.,* 466 F.2d 743, 744 (2d Cir.1972); *Checker Motors Corp. v. Chrysler Corp., supra,* 405 F.2d at 323; *Crimmins v. American Stock Exchange, Inc.,* 346 F.Supp. 1256, 1258–59 (S.D.N.Y.1972). An additional factor of relevance to be considered is the public inter-

**3.** That section provides:

"§ 1125. *False designations of origin and false descriptions forbidden*

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

est. *American Motorists Ins. Co. v. City Wide Transportation Co.,* 308 F.Supp. 1080, 1084 (S.D.N.Y.1969); 7 J. Moore, Federal Practice ¶ 65.04[1], at 47 (2d ed. 1948).

■ The mislabelling here is blatant and unambiguous as the various exhibits clearly show. Plaintiffs have, at very least, shown or raised serious questions going to the merits and even a cursory examination would indicate the equities are in plaintiffs' favor. There is and has been public confusion. Mislabelling carries with it the injury to reputation. "Since injuries to reputation are not readily recompensed by money damages the harm caused may well be irreparable." *Cutler Hammer, Inc. v. Universal Relay Corp.,* 285 F.Supp. 636, 639 (S.D.N.Y. 1968) (injunction granted). Also, the interest of the public is not insubstantial.

■ Defendants oppose on several grounds. Initially, defendants allege that service of the plaintiffs' Notice of Motion was defective thereby precluding personal jurisdiction. The substance of this allegation is that service of the instant motion papers was made by an attorney rather than by a United States Marshal and that this factor rendered the service defective. Defendants concede that service of the summons and complaint was valid. This was sufficient to secure jurisdiction over the persons of the defendants and no further service by a Marshal or by a person duly authorized by the Court was required when service of the plaintiffs' motion papers was effected.

■ Defendants also contend that an arbitration clause in the 1972 agreement prevents plaintiffs from now seeking relief in this forum. The Court notes first that there has been no formal demand for arbitration. Even assuming a timely demand for arbitration, this would not preclude the grant of preliminary injunctive relief under the instant circumstances. *Cf. New England Petroleum Corp. v. Asiatic Petroleum Corp.,* 82 Misc.2d 561, 368 N.Y.S.2d 930 (Sup.Ct.1975).

■ Finally, defendants allege that under the 1972 agreement they were allowed to purchase plaintiffs' products for a period of 120 days after the date of the agreement, and that the product samples now appearing in the marketplace are, in all likelihood, validly before the public pursuant to that provision. This argument is weak at best. The agreement provides for a gradual termination of business relations so as to disrupt the business dealings of all parties concerned as little as possible. The agreement appears to contemplate the continued distribution of the products in question by defendants for a limited period of time, and would have them identified as such. The exhibits before the Court, however, are not marked so as to indicate that they are being distributed by defendants, but rather obscure the plaintiffs' name and substitute the name of the defendants, thereby appearing to identify defendants as more than mere distributors of the product. While the final determination of this question will await a trial on the merits, defendants' interpretation of the contract provision does not appear reasonable for the purposes of this motion.

Accordingly, the plaintiffs' motion for a preliminary injunction is granted and the defendants' cross-motion to dismiss is denied. Submit order.